1

2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3

4   ALLEN KATYNSKI,

            Plaintiff,                          Case No. 2:13-cv-00752-APG-PAL

5

6       v.                                      **ORDER ON MOTION FOR SUMMARY**
                                                **JUDGMENT**

7   CERTAINTEED GYPSUM
    MANUFACTURING, INC., SAINTGOBAIN            (Dkt. #53)

8   CORPORATION; and DOES I
    through X, and ROE CORPORATIONS I

9   through X,

10            Defendants.

11

12          Plaintiff Allen Katynski was injured while working at a gypsum manufacturing plant

13  owned by Certainteed Gypsum Manufacturing, Inc. ("CGM").  Katynski claims his supervisors

14  discouraged him from filing a worker's compensation claim and then terminated him when he

    filed a claim.  Katynski brought this lawsuit against CGM and its parent company, the Saint-
15
    Gobain Corporation, asserting claims for: (1) wrongful discharge, (2) breach of the covenant of
16
    good faith, and (3) intentional infliction of emotional distress ("IIED").  Defendants seek
17
    summary judgment on all of Katynski's claims.  Defendants also request that I dismiss Saint-
18
    Gobain because no valid claims are asserted against it.
19
            Katynski has created a genuine dispute as to whether CGM wrongfully terminated him in
20
    retaliation for filing a worker's compensation claim.  But defendants are entitled to summary
21
    judgment on the other claims.  A contract is a necessary element of the implied covenant of good
22
    faith claim, and Katynski fails to rebut defendants' showing that no contract exists between them.
23
    Katynski also has failed to submit evidence rebutting defendants' showing that its conduct did not
24
    rise to the level of extreme and outrageous required to support an IIED claim.  Finally, Katynski
25
    has failed to provide any evidence or argument to suggest that Saint-Gobain is a proper party in
26
    this case, so I dismiss it from this lawsuit.
27

28

1

## I.     BACKGROUND

2      From 2007 to 2012, Katynski worked for CGM at a gypsum manufacturing plant in Blue

3   Diamond, NV.  Katynski operated a piece of machinery known as the "knife."  During this period

4   at CGM, Katynski's supervisors were Phillip Chavira, and James Turba.

5      In July of 2012, Katynski resigned from CGM and moved to Ohio to be near his son.

6   Shortly after starting a new job in Ohio, Katynski was terminated and returned to Nevada.  Turba

7   offered Katynski a new job at CGM as a laborer and trainer for the new "knife" operator.

8   Katynski was rehired on October 3, 2012.  The parties agree that, when Katynski returned to

9   CGM in October of 2012, he was subject to a 60-day probationary period in which CGM could

10   terminate him at will.

11      **A.    Katynski's attitude upon returning to the Blue Diamond plant**

12      The parties agree that, after working in Ohio and returning to the Blue Diamond plant,

13   Katynski's attitude changed.  Defendants' witnesses testified that Katynski had a negative

14   attitude.[1]  They also testified that Katynski acted inappropriately on several occasions.  For

15   example, Katynski allegedly threw papers at his supervisor, left his work area without

16   authorization, showed frustration when receiving critiques, and—on October 12, 2012—had a

17   verbal altercation with a co-worker.[2]

18      Katynski disputes defendants' characterization of his attitude.  According to Katynski, his

19   attitude was more sober upon returning to CGM, but he never threw papers at his supervisor, he

20   had permission to leave his work area, and during the October 12 incident it was another

21   employee, not Katynski, who instigated the altercation.[3]

22

23

24

25      [1] (Dkt. ##53-1 at 102-105.)

26      [2] (Dkt. ##53-1 at 100-120; 53-2 at 90-91.)

27      [3] (Dkt. #59 at 45-81.)

28                        Page 2 of 9

1

**B.    Katynski's back injury, worker's compensation claim, and termination**

2      On October 9, 2012 Katynski injured his back while shoveling at work.[4]  Katynski

3   testifies that he reported the injury to his supervisors but that they discouraged him from filing a

4   worker's compensation claim.[5]  Katynski was told to "suck it up" and pay for his own treatment.[6]

5   He was told that if he wrote down on forms that the injury was a work injury, Chavira would

6   erase Katynski's writing.[7]

7      Katynski also testifies that on October 12, 2012—the same day Chavira says Katynski had

8   a verbal altercation with a coworker—Katynski could not take the pain anymore and decided to

9   leave work and go to a hospital for treatment.[8]  Chavira admits that he decided to terminate

10   Katynski on October 12, but he testifies that his decision was based on Katynski's poor attitude,

11   not his work injury.

12      Despite that Katynski had reported his injury and was diagnosed by a doctor, his

13   supervisors emailed the worker's compensation administrator and told him that Katynski's claim

14   was a lie.[9]  Later, CGM withdrew its opposition to Katynski's worker's compensation claim.

15   Turba did not inform Katynski of his termination until November 1, 2012 when Katynski returned

16   to work with his medical release.

17   **II.    LEGAL STANDARDS**

18      **A.    Summary Judgment**

19      Summary judgment is appropriate when "the pleadings, depositions, answers to

20   interrogatories, and admissions on file, together with the affidavits, if any, show there is no

21   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

22

23      [4] (*Id.* at 40.)

24      [5] (*Id.* at 45.)

25      [6] (*Id.* at 46.)

26      [7] (*Id.* at 52-81.)

27      [8] (*Id.* at 90-91.)

28      [9] (Dkt. #53-1 at 105-10.)

law."[10]  For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[11]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[12]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[13]  She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[14]

A party must support or refute the assertion of a fact with admissible evidence.[15]  As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[16]  Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

## III.   DISCUSSION

### A.   Tortious discharge claim

An employer may be liable for a tortious discharge if it terminates an employee for reasons that violate public policy.[17]  Nevada has recognized that terminating an employee in

---

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[11] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[13] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[14] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[15] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.,* 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[16] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

[17] *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 212 (Nev.1991).

retaliation for filing a worker's compensation claim violates public policy.[18]  "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed motive' theory; thus, a plaintiff must demonstrate that his protected conduct was the proximate cause of the injury."[19]

There are genuine disputes of fact material to whether Katynski's worker's compensation claim proximately caused his termination.  Defendants have provided evidence indicating Katynski was terminated because he had a negative attitude and violated CGM's rules.  But Katynski has provided sufficient evidence to create a genuine dispute about whether these were the real reasons he was fired.  For example, (1) Katynski testifies that his supervisors discouraged him from filing a worker's compensation claim, (2) Chavira admitted that he decided to terminate Katynski within a few days of his workplace injury and on the same day Katynski left work to seek medical treatment,[20] (3) CGM challenged Katynski's claim with the worker's compensation administrator, and (4) Katynski testifies he did not have a negative attitude at work or violate CGM's rules.[21]  Determining the credibility of defendants' witnesses and Katynski's testimony is the province of the jury.  And—viewing the facts in a light most favorable to Katynski—a rationale jury could find that he would not have been terminated but for his worker's compensation claim.

Because I find there are genuine disputes of fact material to whether Katynski's worker's compensation claim was the proximate cause for his termination, I deny summary judgment on the tortious discharge claim.

---

[18] *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (Nev.1984).

[19] *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1319-20, 970 P.2d 1062, 1066 (1998); *see also Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984) (expressly permitting retaliatory discharge claim if an employer terminates an employee for filing a worker's compensation claim).

[20] Notably, proximity in time between a protected activity and a negative employment action is an important factor in discrimination and retaliation cases. *See Kristzen v. Flender Corp*, 589 N.E.2d 909 (1992).

[21] (Dkt. #59 at 45-81.)

**B.    Breach of the covenant of good faith and fair dealing**

In his response to the motion, Katynski withdraws his claim for breach of the implied

covenant.[22]   Nevertheless, I grant summary judgment on this claim in defendants' favor.[23]  A

claim for breach of the covenant of good faith and fair dealing requires a plaintiff to demonstrate

that a contractual relationship existed and that the covenant of good faith was breached.[24]

Katynski has failed to establish that any contract existed in this case or that the implied covenant

has been breached.  Section 301 of the Labor Management Relations Act also appears to pre-empt

Katynski's implied covenant claim.[25]  Because defendants have met their burden to show

judgment as a matter of law is warranted, and because Katynski has failed to rebut this showing, I

grant summary judgment in defendants' favor on the breach of implied covenant claim.

**C.    IIED claim**

To prove a claim of IIED in Nevada, Katynski must show (1) the defendants' conduct was

extreme and outrageous; (2) the defendants either intentionally or recklessly caused the emotional

distress; (3) the plaintiff actually suffered severe or extreme emotional distress; and (4) the

defendants' conduct actually or proximately caused the plaintiff's suffering.[26]

A retaliatory termination, in itself, "does not even come close" to extreme and outrageous

conduct.[27]  Only where an employer's treatment of an employee "go[es] beyond all possible

---

[22] (Dkt. #59 at 3.)

[23] Katynski suggests that his agreement to withdraw this claim moots defendants' motion as to this claim. But defendants moved for summary judgment and they are entitled to judgment if they meet their burden.  Katynski was free to seek dismissal of his claim prior to my consideration of this motion for summary judgment, but he did not.

[24] *Martin v. Sears Roebuck*, 111 Nev. 923, 927 (1995).

[25] *See Burnside v. Kiewit Pac. Corp.,* 491 F.3d 1053, 1059 (9th Cir. 2007).

[26] *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 92 (1981); *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141, 1145 (1983); *see also Posadas v. City of Reno*, 109 Nev. 448, 851 P.2d 438, 444 (1993).

[27] *Kegel v. Brown & Williamson Tobacco Corp.,* No. 3:06-cv-00093-LRH-VPC, 2009 WL 656372, at *9 (D. Nev. March 10, 2009) (granting summary judgment in favor of employer where employee asserted IIED claim based on alleged retaliatory termination for filing a worker's compensation claim); *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D.Nev.1993).

bounds of decency, is atrocious[,] and utterly intolerable" will the defendant be liable.[28]
Occasionally treating another in an inconsiderate, unkind, or rude manner is not enough.[29]  Nor is
conduct extreme and outrageous merely because an employer knows the employee will "regard
the conduct as insulting, or will have his feelings hurt."[30]

Even if there is a genuine dispute as to whether Katynski suffered severe emotional
distress, he has not created a triable issue as to whether defendants carried out extreme and
outrageous conduct.  Viewing all of the evidence in a light most favorable to Katynski, his
supervisors discouraged him from filing a worker's compensation claim and refused to pay for his
medical treatment.  On a few occasions, his supervisors made derogatory comments about his
injury.  Even if all this is true, defendants' conduct does not rise to the level of extreme and
outrageous.[31]

The cases cited by Katynski address situations where an employer did much more than
make a few derogatory comments and terminate an employee for a wrongful reason.  In *Shoen v.
Amerco, Inc.,* 111 Nev. 735, 747, 896 P.2d 469, 477 (1995), the Nevada Supreme Court found
triable issues on an IIED claim because evidence indicated the defendant assaulted and threatened
the plaintiff, admitted to litigating a lawsuit solely to harass the plaintiff, and knew that
termination would cause the plaintiff extreme distress because the defendant and plaintiff had
undergone counseling together.  Likewise, in *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev.

*Hirschhorn v. Sizzler Restaurants Int'l, Inc.,* 913 F. Supp. 1393, 1401 (D. Nev. 1995); *Welder v. Univ. of South. Nev*., 833 F.Supp.2d 1240, 1245-46 (D. Nev. 2011).

[28] *Alam*, 819 F.Supp. at 911.

[29] *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998) (per curiam) (quotation omitted); *Schneider v. TRW, Inc.,* 938 F.2d 986, 992–93 (9th Cir.1991) (affirming summary judgment against plaintiff's IIED claim where her supervisor "screamed and yelled in the process of criticizing her performance, threatened to throw her out of the department and made gestures she interpreted as threatening").

[30] *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

[31] *See, e.g., Hirschhorn v. Sizzler Restaurants Int'l, Inc.,* 913 F. Supp. 1393, 1401 (D. Nev. 1995) (termination and derogatory comments not enough to constitute extreme and outrageous conduct).

372, 378 (1999), evidence showed that the defendant admitted to the plaintiff that she was demoted because of her worker's compensation claim, that employees openly speculated about plaintiff's demotion without recourse, and that the plaintiff's complaints about her harmful work environment were ignored.

Here, Katynski has provided evidence that defendants might have refused to pay for his medical treatment and potentially terminated him because he filed a worker's compensation claim.  Defendants' conduct was potentially wrongful, but not "beyond all possible bounds of decency."  I therefore grant summary judgment in defendants' favor on Katynski's IIED claim.

**D.     Whether Saint-Gobain should be dismissed from this lawsuit**

Defendants argue that Saint-Gobain should be dismissed from this case because it was not Katynski's employer and there are no allegations against it.  Katynski argues Saint-Gobain is a proper defendant because it was his employer.  Katynski reasons that because Saint-Gobain's name was on his paychecks, defendants have the burden of rebutting the inference that Saint-Gobain is his employer.

Under Nevada law, an employment relationship is created "when the 'employee' is under the control of the 'employer.'"[32]  "This element of control requires that the employer have control and direction not only of the employment to which the contract relates but also of all of its details and the method of performing the work."[33]

Here, the only evidence indicating Saint-Gobain was Katynski's employer is that its name was on some of Katynski's paycheck stubs.  This is insufficient to establish the existence of an employment relationship.  There is no evidence Saint-Gobain controlled Katynski's employment,

---

[32] *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1223 (1996) (*quoting Nat' Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 657 (1978).

[33] *Id.*

and Katynski has not provided any other evidence or authority to indicate Saint-Gobain might be liable for any claim in this lawsuit.[34]  I therefore dismiss Saint-Gobain from this case.

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Dkt. #53) is GRANTED in part and DENIED in part as follows:

1. Summary judgment is granted in defendants' favor as to the second cause of action for breach of the implied covenant of good faith and fair dealing and third cause of action for intentional infliction of emotional distress.

2. Summary judgment is denied as to the first cause of action for wrongful discharge.

IT IS FURTHER ORDERED that the Saint Gobain Corporation is dismissed from this lawsuit.


DATED this 9th day of March, 2015.


_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[34] Katynski's entire argument on this issue consists of two sentences without citation to authority or evidence.